RENNICK v. CHLOE, (a person of color.)

1. The certificate of the presiding judge of a court of record in another State, that the attestation of the clerk of such court, is in due form, and by the proper officer, is conclusive evidence that the certificate contains all the facts, which, by the laws of that State, it should have certified.

2. In all the slaveholding States color raises the presumption of slavery, and, until the contrary is shown, a person of color is deemed to be a slave.

3. A statute of a slaveholding State, authorising persons to dispose of their property by will, will not be construed as conferring a power to emancipate slaves. The power to emancipate slaves, in another slaveholding State, must be shown to exist by the laws of that State, and if not so shown, the courts of this State will presume that no such power exists.

Appeal from the Lafayette Circuit Court.

*Doniphan, Ryland, & Wood for Appellants.*

1st. That there is no judgment on the demurrer of the defendant in error, to the special pleas in bar of the plaintiffs in error, and that the issue in law remaining undisposed of, arising on that demurrer, it was error in the circuit court to proceed to trial of the issue of fact on the third plea. Statutes State of Mo. page 462, sec. 1: 1st vol. Decisions of Sup. Court Mo. page 501, State of Missouri v. Gather and others. As to judgment on demurrer 360, 348, 293, Harris' Entries, 2d vol.

2d. It was error in the circuit court to admit as evidence the paper marked B. See page of record 27. The paper purports to be the will of Nicholas Wren, and is not competent as evidence, because,

First, No evidence was adduced that by the law of Kentucky a slave may be freed by will, and the proof as taken is not in conformity with the requisitions of the laws of this State. See 1st sec., page of the record 36.

Second, If by the laws of Kentucky slaves can be freed by will, the clerk's certificate is not full enough. It does not show the order of the court, nor does it show a proof of the facts required to establish a will. 1st section of the act of Kentucky, page of the record 36. See also 3 Marshall, 144.

3d. It was error in the circuit court to admit as evidence the paper marked C. See page 31 of record.

4th. That the circuit court having permitted the defendant in error to give evidence as to what Isaac Wren had said about the freedom of Chloe, (see page of the record 60, dep. of Abm. Tuyman,) refused to permit the plaintiffs in error to introduce the same proof of Henry Rennick, (see page of the record 81,) and that this was error.

5th. That the defendant in error, to sustain her action for freedom, based on the said will of said Nicholas Wren, must be competent evidence to prove that by the laws of Kentucky a slave can be emancipated by will, and that there is no such proof in this case.

6th. That the defendant in error having been shown to have been a slave of Nicholas Wren, who is proved to have died in Kentucky, and as no law is proved to have been in force in that state which authorised the said Wren to emancipate the defendant in error by will, she is to be presumed still a slave.

7th. That in the absence of proof of what the law of the State of Kentucky is on the subject of emancipating slaves, the defendant in error to avail himself of the benefit of the law of this State, must show that the will of Nicholas Wren was proved as required by the law of this State, and that a'l the requisites of the law of this State, in relation to the probate and record of wills emancipating slaves, have been complied with, and that the defendant in error has failed to to show this. See Statutes of Mo., page 587, sec. 1 and 6 inclusive.

8th. That the defendant in error was not emancipated by the will of itself, but by the provisions of the will was not to be freed, by the executors on the happening of certain contingencies and events, and that the executors having failed to emancipate the defendant in error, as required by the will, her remedy for freedom is in chancery, and not at law. See 3 Little, 239, Peters v. Cooke.

9th. That the circuit court erred in overruling the motion of the plaintiffs in error for a new trial. Ky. Digest, 608; 4 Mo. Rep. 450, Leap v. Eliot.

*French, Burden, & Young for Appellees.*

That the circuit court committed no error in refusing to grant a new trial.

1st. That the record shows that the issue upon the first and second pleas were found by the court, and judgment thereon given, and rightly given for the defendant in error.  2 Harris' Entries, page 348 ; 5 Little's Rep. page 118, Cochran's executors v. Davis.

2d. The court committed no error in allowing the papers marked B. and C. to be read by the defendants in error to the jury as evidence.  1 Starkie Ev., page 193; Statute of U. States, cited in 1st Starkie Ev., page 190, note 1st; 1 Starkie Ev., page 212; Statute of U. States of 1804, cited on same page, note 2d.

3d. The court committed no error in giving the instructions asked by the defendant in error.  See same authorities cited to the first point, and Hail v. Palmer and wife, 2d semi-an. part, 5th vol. Mo. Rep., page 403.

4th. The court committed no error in refusing to give the instructions asked by the plaintiffs in error.  Ralph (a man of color) v. Duncan, 3 vol. Mo. Rep. page 194.

5th. There is no error in the instructions given by the court, at least if there is, the error is against the defendant in error.

6th. The circuit court committed no error in sustaining the demurrer to the special pleas of said plaintiffs in error. 1 Chitty's Plead., page 455; Revised Statutes of Mo. 1835, page 286, section 11.

7th. The circuit court committed no error in refusing to let the witness, Henry Rennick, relate the conversation he had with John Wren, the executor of Nicholas Wren, dec.

*Opinion of the Court by Napton, Judge.*

The appellee instituted a suit in the Lafayette circuit court to recover her freedom.  The declaration was in the usual form, and two special pleas, and the plea of not guilty were filed by the defendants below. The special pleas were

demurred to, and issue taken on the plea of not guilty. The demurrers were sustained by the court, a trial had upon the general plea of not guilty, and the plaintiff had a verdict and judgment.

The testimony is preserved by a bill of exceptions. It appeared that the plaintiff was a slave of one Nicholas Wren, of Warren county, Ken., who died sometime in the year 1809, at an advanced age, having made his last will and testament. The will contained the following clause :

"It is my will, that in case Elizabeth, my wife, should die before the year 1820, Chloe, the negro girl, should be set free at the date of 1820. And it is my will that she serve out her time with one of my executors, (viz. my son Isaac Wren,) in case I should decease before that time. And if the said negro girl, Chloe, should have any increase previous to the said year 1820, it is my will that my said son Isaac Wren, should raise the children until they arrive to the age of twenty-one years, and then set them free also."

It appeared that Elizabeth Wren died in 1819, and that before the year 1820, the appellee, Chloe, had three children. John Wren, one of the sons and executors of his father's will, qualified and acted as executor ; but Isaac Wren, who lived in a remote county, did not act. Isaac Wren, however, it was proved, permitted the woman Chloe and her three children to be taken by William Rennick, one of the appellants, to Missouri, and a bill of sale was given by Isaac Wren, conveying his interest in Chloe's children until they arrived at the age of twenty-one years. It appeared, moreover, from the testimony of Isaac Wren and others, that William Rennick, one of the appellants, was fully apprised that Chloe was a free woman, and that her children were to be free at the age of twenty-one. His acknowledgments to this effect both before he left Kentucky and during his residence in this state, were given in evidence.

The copy of the will given in evidence was proved in accordance with the provisions of the act of Congress of March 27th, 1804. The certificate of probate was as follows :

"Warren County, sct. January County Court, 1810. This last will and testament of Nicholas Wren, deceased, was

proven by the oath of John Whitesides and David Barbree, two subscribing witnesses thereto, and ordered to be recorded. Attest, Jonathan Hobson, Clerk, W. C. C." Then follows the certificate of the clerk, that the above is a full and perfect transcript of the record of the original certificate of the probate, as it remained in his office. The other necessary certificates accompanied this, to which no objection was raised. A sworn copy of the will was also affixed and given in evidence.

The statute of Kentucky, entitled an act to reduce into one the several acts respecting wills, the distribution of intestate's estate, &c." was also given in evidence. By that act it is in substance provided, among other things, that every person over the age of eighteen, being of sound mind, and not a married woman, shall have power by last will and testament in writing, to dispose of his chattels, provided such last will shall be signed by the testator, or by some other person in his presence and by his directions, and if not wholly written by himself, be attested by two or more competent witnesses subscribing their names in his presence. It is further provided by the 36th section of the same act, that " all certificates of probate or of administration attested by the clerk, shall enable the executor or administrator to act, and may be produced or given in evidence in any court within the commonwealth, &c."

The depositions of several witnesses were read in this case, conducing to prove the identity of the negro woman, the admissions of the appellants, and the fact that the appellee was still held in slavery.

The court instructed the jury that if they were satisfied that Nicholas Wren owned Chloe as his slave, and that he made his last will, as it was given in evidence, and that Chloe is the same woman mentioned in said will, and that Elizabeth Wren, the wife of the said Nicholas died before the year 1820, and that the said Nicholas Wren was over the age of twenty-one years when he made his said will, and that defendants or either of them at or before the commencement of this suit held the woman in slavery, they must find for the plaintiff. The court refused to instruct the

22

jury, at the instance of the defendants, that there was no evidence given which showed, that by the laws of Kentucky, Nicholas Wren had any power to liberate his slaves by will, and that therefore the jury must find for the defendants. The court was also asked to say, that there was no evidence that the executor who qualified under the will, had ever set the plaintiff free; but the court refused to give this instruction, but instructed the jury that under the will, no act of the executors, or either of them, was necessary to set the plaintiff free, but that she became a free woman whenever the contingencies mentioned in the will happened. Many other instructions are found upon the record, but they seem to have no bearing upon the points involved in this case.

The material points arising on the record are,

1. Was the proof of the will and the probate thereof competent?

2. Were the instructions given by the court correct?

3. The admissibility and sufficiency of the admission of the defendant to establish the freedom of the plaintiff.

First. No objections have been taken to the proof of the will, under the act of Congress of March 27, 1804, except so far as it relates to the sufficiency of the certificates of probate. That certificate is supposed to be insufficient, because it does not show the order of the court, and does not contain a proof of the facts requisite to establish a will, under the first section of the act of the General Assembly of Kentucky, heretofore recited. The certificate of the clerk states that the two subscribing witnesses (naming them) proved the will, and that the same was ordered to be recorded. This certificate forms a part of the copy of the record certified by the clerk to be a full and perfect transcript of the record of the original certificate of the probate as it remained in his office. The 36th section of the act of Kentucky provides that all certificates of probate, attested by the clerk, may be produced or given in evidence in any court within that State. The form of the certificate, and the facts necessary to be certified, are not pointed out by that statute. But the justice, whose certificate follows that of the clerk, certifies that the attestation of the clerk is in due form and

by the proper officer. The clerk then certifies to the judicial character of the presiding officer.

The certificate of the presiding justice is conclusive evidence that the certificate of the clerk is in due form, and contains all the facts which, by the laws of that State, it should have certified. Nor can this court go behind the certificate of the clerk, and presume that any other or further order appears on the record of the county court of Warren county, than what appears on the transcript certified by the clerk, and which transcript he certifies to be a full and perfect transcript. All the requisites of the act of Congress seem to have been fully complied with; and the copy of the will, and the probate thereof, was competent testimony.

Second. The instructions of the court assume the ground that the act of the General Assembly of Kentucky, authorising a man to dispose of his chattels by will, authorises him to emancipate his slaves, unless some statute prohibiting the same is shown.

They are predicated on the hypothesis, that a general power to dispose of chattels by will, includes a power to bequeath liberty to a slave; that species of property being regarded as personal property in most, if not all, of the slave holding states; and that the courts of this state will not presume any restrictions upon this power, unless they be shown.

Whether slaves are to be regarded as chattels or real estate, is a question which in my opinion is caculated to throw no light upon this subject. They are in truth a species of property *sui generis,* to be held, disposed of, and regulated according to the laws of each particular state where slavery exists. In all slaveholding states *color* raises the presumption of slavery, and until the contrary is shown, a man or woman of color is deemed to be a slave. I speak, of course, of the slaveholding states of this Union, and in reference to the judicial determinations of the courts of those states, including our own.

It is judicially known to the courts of this state, that certain states of this Union recognise in their respective constitutions the existence of slavery within their limits. The

SEPT'R TERM, 1841.

Rennick
v.
Chloe.

The certificate of the presiding judge of a court of record, in another state, that the attestation of the clerk of such court, is in due form, and by the proper officer, is conclusive evidence that the certificate contains all the facts, which by the laws of that state it should have certified.

In all the slaveholding states, *color* raises the presumption of slavery, and, until the contrary is shown a person of color is deemed to be a slave.

SEPT'R TERM, general policy of such states, in relation to this subject, is a
1841.        matter of history.     Is it consistent with this policy, and the

Rennick      safety of the State, that in states where slavery is tolerated,
v.           embracing a class of people of a different race and different
Chloe.       color from the citizens of those states, every slaveholder
             should be at liberty upon his own mere emotion to emanci-
             pate his slaves, without the assent of the people of that state,
             expressed through legislative enactments?   No such power
             could be presumed by a court, consistent with the character
             of our political institutions.

Nor do I think any such power could be fairly inferred
from an act authorising individuals to *dispose* of their chat-
tels, admitting slaves to be chattels, and they are so regard-
ed for many purposes.   A power to dispose of chattels could
not fairly be construed into a power to confer an important
political right upon a slave.   That power could only be ex-
ercised by the consent of the sovereignty.   The master of
the slave is not the only person concerned in such a privi-
lege as this;   the whole community are alike interested.   If
the legislature authorised a citizen to dispose of all his lands
and tenements, it would hardly be contended that such an
act would authorise a man to burn down his house situated
in the midst of a large city, to the great damage and per-
haps destruction of his neighbor's property.   No more could
a power to dispose of slaves be deemed a power to annihi-
late slavery, by converting slaves into freemen.

A statute of        The act of the Kentucky legislature, authorising persons
a   slavehold
ing state, au   of a certain age to dispose of their chattels, did not there-
thorising per-  fore, in my opinion, authorise them to emancipate their
sons to dis-
pose of their   slaves, and the appellee having produced on the trial no such
property   by    law, the court should have instructed the jury to find for the
will, will not
be construed    defendants.
as conferring
a power to          Third. In relation to the admissions of the defendants,
emancipate      the court is of opinion that such admissions, of themselves,
slaves.   The
power to        are insufficient to authorise a verdict for the plaintiff.   When
emancipate
slaves, in ano- a suitable foundation is laid for such testimony, the admis-
ther slave-     sion of a person holding another in slavery that he or she is
holding state,
must be         free, is undoubtedly for many purposes legitimate evidence.
shown to ex-    They cannot of themselves prove the fact of freedom.   If
ist by the

this were so, the consequences are most apparent. It would only be necessary for the owner of slaves, however old and decrepit and worthless, to declare that his slaves were free, and *ipso facto*, they become free, and could upon these declarations or admissions obtain their freedom by a suit. This would clearly evade all legislative enactments, and conflict with the policy and indeed safety of all slaveholding states.

But if the law of a state allows a master to emancipate his slave, and such emancipation is effected either by will or deed, in conformity with the law, the admission of the master, or others holding the petitioners in bondage, would be evidence proper to go to a jury, to show a compliance on the part of the slave with any condition which the will or deed may have imposed. In the present case, if the plaintiff had shown that by the laws of Kentucky, a master could set his slave free by will, the admissions of the defendants could have gone to the jury to show a compliance with the will by the executor, supposing that by the terms of the will of Nicholas Wren, any act was necessary to be done by his executor, or by the plaintiff, before the plaintiff would have been by the will entitled to her freedom. The admissions of the executor, or of the defendants, would undoubtedly be good evidence to show a performance of such conditions precedent.

Judgment reversed and cause remanded.

*Tompkins, Judge.*

In my opinion the judgment of the circuit court ought to have been affirmed.